**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

**JENNIFER MASSO, Individually and as Personal Representative of the ESTATE of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors: Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith,**

**Plaintiffs,**

**vs.**

**CITY OF BOCA RATON; and, MICHAEL SUPER, police officer, in his individual capacity;**

**Defendants.**

______________________________________/

**COMPLAINT**

**COMES NOW**, Plaintiff JENNIFER MASSO, as Personal Representative of the Estate of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors JENNIFER MASSO, individually, as his wife; Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith, Plaintiffs, and, hereby files this Complaint by and through the undersigned counsel against the above-named Defendants CITY OF BOCA RATON; and, MICHAEL SUPER, police officer, in his individual capacity, for causing the death of MOREY CLEMMONS, on December 18, 2024, for which Plaintiffs now seek damages, and in support thereof alleges as follows:

## VENUE, JURISDICTION, AND PARTIES

1. This action is brought for wrongful death pursuant to Florida's Wrongful Death Statute § 768.21, and United States Constitution Amendments IV and XIV, 42 U.S.C. § 1983. Plaintiffs have complied with all condition's precedent set forth by the state of Florida pursuant to Florida Statute 768.28.

2. Defendant CITY OF BOCA RATON (hereinafter "CITY") owns and operates the Boca Raton Police Department (hereinafter "BPD") and is a Florida municipal corporation or political subdivision of the state of Florida, organized and existing under the laws of the state of Florida, and operating and conducting business in the City of Boca Raton in Palm Beach County, Florida. Defendant CITY employs BPD police officer Defendant MICHAEL SUPER.

3. Defendant Officer MICHAEL SUPER, was a resident of Palm Beach County, Florida, at the time of the incident.

4. Decedent MORREY CLEMMONS, was a resident of Palm Beach County, Florida, at the time of the subject incident.

5. Plaintiff JENNIFER MASSO, is pursuing this matter individually and as the Personal Representative of the Estate of MOREY CLEMMONS. Plaintiff was appointed Personal Representative in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, in Case. No.: 50-2026-CP-004583. Please see attached Exhibit A, *Letters of Administration and Order Appointing Personal Representative*. Plaintiff JENNIFER MASSO is the wife of MOREY CLEMMONS, a survivor of his estate; and, is also the mother of decedent MOREY CLEMMONS surviving minor children Jor. C. and Jou. C. (note initials are used to protect the minor child's identity), who are also survivors of his estate. In addition,

Plaintiff is bringing this cause of action on behalf of decedent MOREY CLEMMONS surviving adult children Niyetta Smith and Leah Smith.

6. Plaintiff was a resident of Palm Beach County, Florida, at all times material to the subject incident and as of today's date.

7. All of the acts or omissions giving rise to this action occurred in Palm Beach County, Florida.

8. Venue is proper in Palm Beach County, Florida as the incident arises out of Palm Beach County, and Defendants operate businesses and/or a governmental agency and/or reside and/or work in Palm Beach County, Florida.

9. This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs, interest, and attorney's fees.

## FACTUAL ALLEGATIONS

10. On December 18, 2024, Defendant Michael Super, an officer with Defendant City's Boca Raton Police Department shot unarmed, mentally ill, and homeless Morey Clemmons 4-5 times in his head, back, and chest, resulting in his death.

11. On December 18, 2024, at approximately 11:11 A.M. witnesses sitting in traffic in Boca Raton placed 911 calls and/or calls to law enforcement to report that Morey Clemmons was yelling and throwing clothes, that he seemed "out of it," he was waving his arms, they feared he could get hit by a car, and that it seemed "strange." The concerned callers described Morey Clemmons as essentially having a mental health crisis, they feared *he posed harm to himself, notably no caller reported that they felt he posed a threat of harm to others*. As such, the call should have been processed by law enforcement as a mental health/wellness check and/or as crisis intervention call.

12. Defendant Michael Super located Morey Clemmons and made contact with him, and then reported via radio at approximately 11:14 A.M. that the call was cleared, he reported that everything was "ok;" and he reported that there was no crime being committed. At the time Defendant Michael Super cleared the call, he had clear knowledge that Morey Clemmons was unarmed and did not have a weapon.

13. Despite clearing the call, Defendant Michael Super continued to follow Morey Clemmons without any reasonable suspicion to do so as he had just radioed in there was no crime. Morey Clemmons walked away from Defendant Michael Super. Defendant Michael Super continued to follow him and then parked his car and watched him. Morey Clemmons walked through a parking lot and Defendant Michael Super continued to watch and follow him without any reason to do so. Morey Clemmons began to cross another road and posed no harm to himself nor any other person.

14. Defendant Michael Super did not radio back into base or notify his supervisors that he continued to follow Morey Clemmons for an extended period of time, at least several minutes. Defendant Super issued no verbal commands and/or inadequate verbal commands throughout the entire incident, did not properly update dispatch, and never turned on his body worn camera.

15. Defendant Michael Super parked his car and got out of his car. Defendant Michael Super began following Morey Clemmons on foot again without any reasonable suspicion and without issuing any verbal commands. After several minutes of being followed by Defendant Michael Super, Morey Clemmons began to run fearing for his safety. Defendant Michael Super continued to chase him on foot.

16. Morey Clemmons was unarmed. Again, Morey Clemmons posed no risk of harm to others.

17. Defendant Michael Super then deployed a taser twice striking Morey Clemmons.

18. At approximately 11:23 A.M. Defendant Michael Super shot Morey Clemmons 4-5 times with a gun resulting in his death.

19. The shooting occurred in the street near the following address: at 50 NW 2nd Ave., Boca Raton, Florida 33432 or near Northwest 2nd Avenue and Northwest 2nd Street.

20. Defendant Michael Super did not have any lawful reason to continue following Morey Clemmons and/or to engage him, and any engagement should have been treated the as a wellness check and/or an incident requiring crisis intervention, and/or Defendant Michael Super should have attempted to de-escalate the situation and/or should have issued proper verbal commands.

21. Defendant Michael Super failed to properly update dispatch as he followed Morey Clemmons and began engaging him without reasonable suspicion, and for no justifiable reason. Defendant City's BPD supervisors failed to adequately supervise Defendant Michael Super during the nearly ten-minute car/foot chase, did not instruct Defendant Michael Super not to engage in pursuit, to stop the pursuit, did not request updates, monitor the progress, or ask if he was still in pursuit. Moreover, Defendant City BPD supervisors failed to ensure that Defendant Michael Super was issuing the proper verbal commands, did not instruct him to deescalate the situation, did not instruct him to treat the situation as a crisis management encounter.

22. Defendant City had a policy requiring crisis intervention training and a policy requiring officers to use deescalation techniques, however it failed to ensure that Defendant Michael Super was trained in crisis intervention training and/or deescalation techniques and did

not properly supervise him through the encounter to ensure that it was handled as a crisis intervention encounter and that appropriate deescalation techniques were used. Moreover, Defendant City by and through BPD failed to promulgate proper policies, procedures, supervise, and/or train officers on establishing pursuit and apprehension policies and lawful use of police practices to avoid violating citizens constitutional rights under the Fourth Amendment.

23. Moreover, Defendant Super had not been properly trained or supervised in the use of lawful and/or constitutional force, due process of terry stops, search and seizures, de-escalation techniques, non-lethal uses of force, non-racially biased policing, the application of the Equal Protection Clause, and how to conduct a lawful Terry stop or investigatory stop. Defendant Super was not properly supervised nor disciplined by the Boca Raton Police Department or Defendant City.

24. Defendant City police officers have a pattern and practice and/or custom and policy of conducting unlawful terry stops, the use of excessive force, of denying African American citizens equal protection under the law, and of denying due process of law. Defendant City's police officers' prior and subsequent uses of excessive force against other citizens, unlawful terry stops, unlawful search and seizure, racially biased behavior, placed Defendant City on notice of its officers' propensity to violate the constitutional rights of citizens. Defendant City's pattern and practice and/or custom and policy of unlawful terry stops, the use of excessive force, unlawful search and seizure, and racial discrimination were the moving forces behind the constitutional violations of Morey Clemmons that caused his untimely death.

**Damages**

25. Defendants' individual and collective actions and omissions actually and proximately caused the death of MOREY CLEMMONS. Plaintiff JENNIFER MASSO, as

Personal Representative of the Estate of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors JENNIFER MASSO, individually, as his wife; Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith, Plaintiffs, are entitled to damages pursuant to Florida's Wrongful Death Act and the Constitution of the United States of America, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a) Award compensatory damages to Plaintiffs;

(b) Award costs of this action to Plaintiffs;

(c) Award reasonable attorneys' fees and costs to Plaintiffs on Federal 1983 Counts pursuant to 42 U.S.C. §1988;

(d) Loss of past and future support and services with interest;

(e) Loss of earnings and net accumulations to the Estate of Morey Clemmons;

(f) Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g) Loss to Plaintiffs and survivors of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Morey Clemmon's death;

(h) Punitive damages where appropriate and allowed by law;

(i) Any and all other and further relief as this Court may deem appropriate.

## COUNT I
## VIOLATION OF UNITED STATES CONSTITUTION, AMENDMENTS IV, 42 U.S.C. § 1983, FOR UNLAWFUL TERRY STOP, UNLAWFUL SEIZURE, AND UNLAWFUL EXCESSIVE FORCE

26. Plaintiffs hereby incorporate paragraphs 1-25 as though fully set forth herein.

27. This is an action brought against Defendant Super pursuant to the United States Constitution Amendments IV in violation of 42 U.S.C. § 1983 and § 1988, for an unlawful terry stop/investigatory stop, unlawful seizure, and excessive force used against Morey Clemmons.

28. At all times material hereto, Defendant Super was an employee and/or agent of Defendant City and was acting within the course and scope of his employment with same, and acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant City.

29. Defendant Super did not have reasonable suspicion of criminal misconduct to conduct a terry stop of Morey Clemmons. The terry stop was not reasonable, Defendant Super cleared the call and said there was no crime, the stop was not related in scope to the circumstances to justify the interference in the first place, and it was not valid in light of a totality of the circumstances.

30. Defendant Super unlawfully seized Morey Clemmons when he shot him with a taser twice and then shot him with a gun 4-5 times. Defendant Super's physical force and use of weapons were means intentionally applied to cause Morey Clemmons to stop. Moreover, it communicated an attempt to capture Morey Clemmons. The force used against decedent Morey Clemmons under these circumstances constituted a seizure as his freedom of movement was limited by intentional government conduct of Defendant Super. A seizure occurs whenever a police officer accosts an individual and restrains his freedom to walk away. As stated above, the seizure of Morey Clemmons was not reasonable.

31. This Count is being brought against Defendant Super in his individual capacity pursuant to U.S.C. Amendment IV, 42 U.S.C. § 1983 and § 1988. The laws prohibiting violations of citizens' rights to be free from unlawful terry stops, unlawful seizure, and excessive force were clearly established at the time of the incident in the United States Constitution via Amendment IV.

32. On December 18, 2024, Defendant Super engaged in an unlawful terry stop by following Morey Clemmons with no reasonable suspicion and after clearing the initial call stating no crime was committed. Moreover, the initial call was to report that Morey Clemmons may have posed a danger to himself and not others. Morey Clemmons did not pose a threat to others and was unarmed at all times during the incident. Defendant Super's deployment of a taser twice and then firing 4-5 gun shots was an unreasonable use of excessive force and constituted the use of deadly force. Morey Clemmons, did not pose any risk to the community or Defendant Super as an unarmed person who was not committing any crime, and the use of force was not objectively reasonable. Defendant Super issued no verbal commands and/or inadequate verbal commands throughout the entire incident, did not properly update dispatch, and never turned on his body worn camera, which is evidence of his ill intent.

33. Defendant Super knew or should have known, and every reasonable officer in that position would have concluded, that violating Morey Clemmons' right to be free of unlawful terry stop, unlawful seizure, and excessive force was unjustifiable, unlawful, and objectively unreasonable.

34. As a direct and proximate result of said Defendant Super's acts, omissions, and deprivation of Morey Clemmons' right to be free of an unlawful terry stop, unlawful seizure, and excessive force, Defendant Super deprived Morey Clemmons, of the rights guaranteed by the

Fourth Amendment of the United States Constitution. In particular, Morey Clemmons was deprived of the right to be free from an unlawful terry stop, unlawful seizure, and an unlawful use of excessive force.

35. Plaintiff JENNIFER MASSO, as Personal Representative of the Estate of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors JENNIFER MASSO, individually, as his wife; Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith, Plaintiffs, are entitled to damages pursuant to Florida's Wrongful Death Act and the Constitution of the United States of America, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a) Award compensatory damages to Plaintiffs;

(b) Award costs of this action to Plaintiffs;

(c) Award reasonable attorneys' fees and costs to Plaintiffs on Federal 1983 Counts pursuant to 42 U.S.C. §1988;

(d) Loss of past and future support and services with interest;

(e) Loss of earnings and net accumulations to the Estate of Morey Clemmons;

(f) Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g) Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Morey Clemmon's death;

(h) Punitive damages; and,

(i) Any and all other and further relief as this Court may deem appropriate.

WHEREFORE, Plaintiffs demand damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and cost.

**COUNT II**
**CUSTOM/POLICY AND/OR PATTERN AND PRACTICE OF VIOLATION OF UNITED STATES CONSTITUTION, AMENDMENT IV, 42 U.S.C. § 1983**
**DEFENDANT CITY**

36. Plaintiffs hereby incorporate paragraphs 1-25 and paragraphs 26-35 as though fully set forth herein.

37. This is an action brought against Defendant City pursuant to the United States Constitution Amendments IV in violation of 42 U.S.C. § 1983 and § 1988.

38. Prior to December 18, 2024, Defendant City and the Boca Raton Police Department developed and maintained customs and policies and/or a pattern and practice, exhibiting deliberate indifference to the constitutional rights of persons in the community, including systemic deprivation of Fourth Amendment rights, which caused the violation of decedent Morey Clemmons's rights. The systemic deprivation of rights constituted a widespread pattern sufficient to notify Defendant City, and were obvious, flagrant, rampant, and not isolated occurrences.

39. Defendant City maintained a custom and policy and/or pattern and practice of conducting unlawful terry stops, unlawful seizures, and of using excessive force. Defendant City failed to adequately and properly train, retrain, supervise, discipline officers, and of failing to conduct fair and impartial investigations of complaints of police misconduct and officers'

substantive due process rights violations, unlawful terry stops, unlawful seizure, and use of excessive force.

40. Defendant City failed to discipline, correct the misconduct, or properly train and/or supervise officers; therefore, exhibiting deliberate indifference to the constitutional rights of persons in the community, specifically, decedent Morey Clemmons, whose constitutional rights were violated pursuant to the United States Constitution's Fourth Amendment, and he was ultimately deprived of his right to life.

41. Defendant City was aware of problems its employees' and Defendant Clemmons's actions, acting under the color of law, unlawful terry stops, unlawful seizure, and use of excessive force, and as employer, failed to investigate and/or reprimand such behavior and failed to discharge said officers for their misconduct thereby ratifying said misconduct and resulting in a deliberate indifference to citizens' constitutional rights. Defendant City failed to properly train and supervise officers, failed to conduct fair and impartial investigations, covered up officers' misconduct, and failed to terminate the employment of officers that violated citizens constitutional rights.

42. Defendant City maintained a policy and custom and/or pattern or practice of failing to properly train its officers, including but not limited to, how to properly assess levels of threat, how to properly conduct a terry stop and/or how to prevent unlawful seizure of a person, how to use radio communications during a terry or investigatory stop and/or, how to use of de-escalation techniques, on crisis intervention training, and on the use of excessive force. Defendant City's failure to properly train its officers is tantamount to a deliberate indifference to their constitutional rights.

43. Defendant City also maintained a policy and custom and/or pattern or practice of failing to conduct fair and impartial investigations into officer misconduct, substantive due process violations, unlawful terry stops, unlawful and seizure, and use of excessive force resulting in a deliberate indifference to citizens' constitutional rights.

44. The abovementioned acts of misconduct were ratified, perpetuated, tolerated and not reprimanded by Defendant City. Thus, Defendant City inadequately discouraged constitutional violations perpetrated by its officers. As a result of the policies and customs and/or patterns and practices Defendant City fostered an environment wherein officers believed that their misconduct would not be subject to monitoring by supervisors, would not be subject to proper investigations, and would not lead to any sanction or discipline but would instead be tolerated by Defendant City.

45. Defendant Super was not properly trained in how to how to properly assess levels of threat, was not properly trained on how to conduct proper investigatory or terry stops and/or on how to prevent an unlawful seizure, on how to properly use radio communications, the use of de-escalation techniques, the use of non-lethal force, on the unlawful use of excessive force, and he did not receive crisis intervention training. Defendant Super was not properly supervised nor disciplined by Defendant City. Defendant City's failure to properly train, discipline, supervise, and/or terminate Defendant Super's employment prior to the subject incident ratified his misconduct and placed decedent Morey Clemmons in danger, and was the moving force behind the violation of his constitutional rights.

46. Defendant City has a widespread pattern and practice and/or custom and policy of unconstitutional conduct and violating citizens' rights pursuant to the Fourth Amendment, including unlawful terry/investigatory stops, unlawful seizures, use of excessive force, and

failure to conduct fair and impartial investigations, failure to properly train and supervise officers, failure to discipline and/or terminate officers, thereby ratifying and perpetuating unconstitutional conduct and exhibiting deliberate indifference to the constitutional rights of the citizens of Boca Raton; said deliberate indifference constituted the moving force behind the violation of Morey Clemmons' constitutional rights pursuant to the Fourth Amendment of the United States Constitution.

47. The above facts denote a deliberate indifference on the part of Defendant City and its policy makers and custom enforcers, to uphold the constitutional rights of citizens of Boca Raton including decedent Morey Clemmons'; in particular citizens' rights pursuant to the Fourth Amendment. Defendant City's deliberate indifference to decedent's constitutional rights actually and proximately caused the violations of Morey Clemmons's constitutional rights guaranteed by the Fourth Amendment to the United States Constitution. Defendant City's numerous failures, actions and inactions perpetrated and ratified unconstitutional policing as aforementioned and were the moving force behind Defendant Super's actions, and actually and proximately caused the violation of decedent's clearly established and constitutionally guaranteed rights.

48. Plaintiff JENNIFER MASSO, as Personal Representative of the Estate of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors JENNIFER MASSO, individually, as his wife; Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith, Plaintiffs, are entitled to damages pursuant to Florida's Wrongful Death Act and the Constitution of the United States of America, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a) Award compensatory damages to Plaintiffs;

(b) Award costs of this action to Plaintiffs;

(c) Award reasonable attorneys' fees and costs to Plaintiffs on Federal 1983 Counts pursuant to 42 U.S.C. §1988;

(d) Loss of past and future support and services with interest;

(e) Loss of earnings and net accumulations to the Estate of Morey Clemmons;

(f) Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g) Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Morey Clemmons's death;

(h) Punitive damages; and,

(i) Any and all other and further relief as this Court may deem appropriate.

WHEREFORE, Plaintiffs demand damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and cost.

**COUNT III**
**NEGLIGENCE- DEFENDANT CITY**

49. Plaintiff hereby incorporates paragraphs 1-25 as though fully set forth herein.

50. This is an action brought against Defendant City pursuant to the Florida Wrongful Death Act for negligence.

51. At all times material hereto, Defendant Super was an employee and/or agent of Defendant City and acting within the course and scope of his employment with same, in furtherance of the interest of Defendant City, and with Defendant City's consent.

52. As such, Defendant City is liable for all of its employees and/or agents' acts and omissions that gave rise to this action, including the actions and inactions of Defendant Super, the Mayor, and City Manager as final decision makers of Defendant City.

53. Defendant City by and through its employees and agents, owed a duty to decedent Morey Clemmons, to act in a prudent and reasonable manner with regard to his health and safety. Defendant City owed a ministerial duty to provide responsible and effective operations of its police department. Defendant City has a ministerial duty to establish proper policies, customs, and regulations of its police department. Defendant City owes a legal duty to supervise its police officers, discipline said police officers and retain only those fit for duty, and to properly train and retrain said officers.

54. Upon information and belief and as cited *supra*, prior to the death of Morey Clemmons, Defendant City had a custom or policy of failing to properly train, retrain, supervise, and discipline officers including Defendant Super on substantive due process rights, de-escalation techniques, how to conduct lawful investigatory/terry stops and seizures, how to avoid creating a zone of risk, the duty not to use excessive force, the use of non-lethal force, on crisis intervention, how to use proper radio communication while conducting a terry/investigatory stop and pursuing on foot, despite having actual knowledge of the need to do so and based upon its pattern and practice of violating citizens constitutional rights. Defendant Super was not subjected to adequate discipline, oftentimes no discipline, or any additional training as a result of violating citizens' rights pursuant to the fourth amendment and for failing to conduct a proper

investigatory stop, unlawful seizures, use of excessive force, including their misconduct for the instant incident. The failures surmounted to violations of non-discretionary duties Defendant City owed to citizens of Boca Raton including decedent, Morey Clemmons. As such Defendant City breached duties including ministerial duties owed to decedent.

55. Defendant City's failure to reprimand and intervene and/or take corrective action of its officers is evidence that Defendants ratified and promulgated misconduct, provides evidence of their breach of the duties owned to the citizens of Boca Raton including decedent Morey Clemmons.

56. Upon information and belief, Defendant City has not formally amended their training and/or policies and/or disciplinary measures and/or supervision techniques, to eradicate similar instances of the unjustifiable violations of citizens constitutional rights, to train officers not to create and/or enhance a zone of risk, evidence of a further breach of duties owed to citizens of Boca Raton. Said breach of duties resulted in Defendant Super breaching the duty he owed by violating the substantive due process rights of Morey Clemmons, violating his right to be free of unlawful terry/investigatory stop, unlawful seizure, and excessive force.

57. Defendant Super owed a duty to decedent to be reasonable in his conduct as a law enforcement officers including driving his motor vehicle in a reasonable way and conducting investigatory stops in a manner consistent with public safety. Instead, he breached his duties and created a zone of risk by calling in dispatch to report he cleared the call and no crime occurred, by continuing to follow Morey Clemmons and offering no and/or inadequate verbal commands, by following him on foot, by chasing him on foot, by failing to turn on his body worn camera, by deploying a taser, and ultimately by shooting him. Defendant Super also had a duty to be

honestly and accurately communicate via radio when he intended to conduct a terry stop or investigatory stop and engage in a vehicular pursuit and breached his duty by failing to do so.

58. Defendants City knew or should have known of the dangers posed by failing to properly train, re-train and supervise its officers, negligently retaining its officers, and that said actions and inactions were likely to result in violations of citizens' rights, and as such were reasonably forseeable.

59. Defendant Super's actions and omissions were unreasonable and breached the duties owed to decedent and Plaintiffs, and actually and proximately caused the death of Morey Clemmons.

60. Plaintiff JENNIFER MASSO, as Personal Representative of the Estate of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors JENNIFER MASSO, individually, as his wife; Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith, Plaintiffs, are entitled to damages pursuant to Florida's Wrongful Death Act, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a) Award compensatory damages to Plaintiffs;

(b) Award costs of this action to Plaintiffs;

(c) Loss of past and future support and services with interest;

(e) Loss of earnings and net accumulations to the Estate of Morey Clemmons;

(f) Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g) Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Morey Clemmon's death;

(h) Any and all other and further relief as this Court may deem appropriate.

WHEREFORE, Plaintiffs demand damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

**COUNT IV**

**NEGLIGENCE- DEFENDANT SUPER**

61. Plaintiffs hereby incorporates paragraphs 1-25 as though fully set forth herein.

62. This is an action brought against Defendant Super pursuant to the Florida Wrongful Death Act for violations of Florida law based in negligence.

63. At all times material hereto, Defendant Super was an employee and/or agent of Defendant City, and acting within the course and scope of his employment with same, in furtherance of the interest of Defendant City, and with Defendant City's consent.

64. Defendant Super owed a duty to decedent to be reasonable in his conduct as a law enforcement officer, including conducting investigatory stops in a reasonable way, using proper verbal commands, using proper deescalation techniques, using crisis intervention techniques, using proper levels of force, using proper radio communications to update dispatch, avoiding creating a zone of risk, avoiding unlawful seizures, using his body worn camera, and policing in a manner consistent with public safety. Instead, he breached his duties by contacting dispatch

and clearing the scene and reporting no crime was committed, by failing to engage his body worn camera, by failing to issue proper verbal commands, by failing to properly update dispatch, by continuing to pursue Morey Clemmons without any reasonable suspicion, by creating a zone of risk, by failing to use crisis intervention techniques, by escalating the encounter, by unlawfully seizing Morey Clemmons, and by using deadly force on an unarmed man experiencing a mental health crisis.

65. Defendant Super's actions and omissions were unreasonable and breached the duties owed to decedent and Plaintiffs, and actually and proximately caused the death of Morey Clemmons.

66. Plaintiff JENNIFER MASSO, as Personal Representative of the Estate of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors JENNIFER MASSO, individually, as his wife; Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith, Plaintiffs, are entitled to damages pursuant to Florida's Wrongful Death Act, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a) Award compensatory damages to Plaintiffs;

(b) Award costs of this action to Plaintiffs;

(c) Loss of past and future support and services with interest;

(e) Loss of earnings and net accumulations to the Estate of Morey Clemmons;

(f) Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g) Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Morrey Clemmons's death;

(h) Any and all other and further relief as this Court may deem appropriate.

WHEREFORE, Plaintiffs demand damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

**COUNT V**
**GROSS NEGLIGENCE- DEFENDANT SUPER**

67. Plaintiffs hereby incorporates paragraphs 1-25 and 61-66 as though fully set forth herein.

68. This is an action brought against Defendant Super pursuant to the Florida Wrongful Death Act for gross negligence.

69. At all times material hereto, Defendant Super was an employee and/or agent of Defendant City and acting within the course and scope of his employment with same, in furtherance of the interest of Defendant City, and with Defendant City's consent.

70. Defendant Super owed a duty to decedent to be reasonable in his conduct as a law enforcement officer, including conducting investigatory stops in a reasonable way, using proper verbal commands, using proper deescalation techniques, using crisis intervention techniques, using proper levels of force, using proper radio communications to update dispatch, avoiding creating a zone of risk, avoiding unlawful seizures, using his body worn camera, and policing in a manner consistent with public safety. Instead, he breached his duties by contacting dispatch

and clearing the scene and reporting no crime was committed, by failing to engage his body worn camera, by failing to issue proper verbal commands, by failing to properly update dispatch, by continuing to pursue Morey Clemmons without any reasonable suspicion, by creating a zone of risk, by failing to use crisis intervention techniques, by escalating the encounter, by unlawfully seizing Morey Clemmons, and by using deadly force on an unarmed man experiencing a mental health crisis.

71. Defendant Super's conduct so reckless or wanting in care that it constitutes a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

72. Defendant Super's actions and omissions were unreasonable and breached the duties owed to decedent and Plaintiffs, and actually and proximately caused the death of Morey Clemmons.

73. Plaintiff JENNIFER MASSO, as Personal Representative of the Estate of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors JENNIFER MASSO, individually, as his wife; Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith, Plaintiffs, are entitled to damages pursuant to Florida's Wrongful Death Act, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a) Award compensatory damages to Plaintiffs;

(b) Award costs of this action to Plaintiffs;

(c) Punitive damages;

(d) Award reasonable attorneys' fees and costs to Plaintiffs on Federal 1983 Counts pursuant to 42 U.S.C. §1988;

(e) Loss of past and future support and services with interest;

(e) Loss of earnings and net accumulations to the Estate of Morey Clemmons;

(f) Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g) Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Morey Clemmon's death;

(h) Any and all other and further relief as this Court may deem appropriate.

WHEREFORE, Plaintiffs demand damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

**COUNT VI**

**LOSS OF CONSORTIUM**
**DEFENDANT CITY AND DEFENDANT SUPER**

74. Plaintiffs hereby incorporates paragraphs 1-25 as though fully set forth herein.

75. This is an action brought against Defendant Super pursuant to the Florida Wrongful Death Act and laws of Florida for loss of consortium.

76. At all times material hereto, including on the date of the subject incident JENNIFER MASSO was the wife of Morey Clemmons, deceased; and Jor. C., Jou. C., Niyetta Smith; and Leah Smith, were children of Morey Clemmons, deceased.

77. The actions and omissions of Defendant Super and Defendant City actually and proximately caused the death of Morey Clemmons.

160. As a result of Morey Clemmons's death, suffered loss of support of household services, loss of companionship, company, cooperation, aid, affection, solace, comfort, companionship, fellowship, society, and assistance necessary to a successful husband wife relationship for JENNIFER MASSO and parent child relationship for Jor. C., Jou. C., Niyetta Smith; and Leah Smith, the loss of the familial relationship with decedent, the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Morey Clemmons's death.

## PRAYER FOR RELIEF

Plaintiff JENNIFER MASSO, as Personal Representative of the Estate of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors JENNIFER MASSO, individually, as his wife; Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith, Plaintiffs, are entitled to damages pursuant to Florida's Wrongful Death Act and the Constitution of the United States of America, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a) Award compensatory damages to Plaintiffs;

(b) Award costs of this action to Plaintiffs;

(c) Award reasonable attorneys' fees and costs to Plaintiffs on Federal 1983 Counts pursuant to 42 U.S.C. §1988;

(d) Loss of past and future support and services with interest;

(e) Loss of earnings and net accumulations to the Estate of Morey Clemmons;

(f) Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g) Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Morey Clemmons's death;

(h) Punitive damages wherein allowed by law.

(i) Any and all other and further relief as this Court may deem appropriate.

**TRIAL BY JURY**

Plaintiff JENNIFER MASSO, as Personal Representative of the Estate of MOREY CLEMMONS, deceased; and on behalf of MOREY CLEMMONS' survivors JENNIFER MASSO, individually, as his wife; Jor. C., decedent's minor child; Jou. C., decedent's minor child; decedent's adult child Niyetta Smith; and decedent's adult child Leah Smith, Plaintiffs, hereby demand a trial by jury on all issues so triable.

DATED: **November 17, 2026**.

Respectfully Submitted,

**/s/Jasmine Rand**
**Jasmine Rand, Esquire**
FBN: 0077047
**RAND LAW, L.L.C.**
2525 Ponce de Leon Blvd., Ste. 300
Miami, Florida 33134
(305) 906-6400 Telephone
(305) 503-9235 Facsimile
*Attorney for Plaintiffs*

**/s/Benjamin Crump**

Benjamin Crump, Esquire
FBN: 0072583
BEN CRUMP LAW, PLLC
122 South Calhoun Street
Tallahassee, Florida 32301
(850) 224-2020 Telephone
(850) 224-2021 Facsimile
ben@bencrump.com
*Attorney for Plaintiffs*